UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION


ALBAN LUKAJ,

       Petitioner,

v.                                                      Case No. 3:19-cv-241-J-34MCR

KEVIN K. MCALEENAN, et al.,

       Respondents.

_____

## ORDER

### I. Status

      Plaintiff Alban Lukaj, a native and citizen of Albania, initiated this action on February 25, 2019, by filing, with the assistance of counsel, a Petition for Writ of Habeas Corpus pursuant 28 U.S.C. § 2241 (Petition; Doc. 1). Lukaj is proceeding on an amended petition filed on May 29, 2019 (Amended Petition; Doc. 8). In the Amended Petition, Lukaj challenges the lawfulness of his detention during the pendency of his removal proceedings. Lukaj also has filed a motion requesting an order granting him bail or an evidentiary hearing on bail pending resolution of this case. See Petitioner's Motion for Bail with Memorandum of Legal Authority in Support (Bail Motion; Doc. 9). Additionally, Lukaj filed a motion requesting "a preliminary injunction enjoining the government from mandatorily detaining him and granting him a bond hearing before this Court to release him from unconstitutional detention." See Petitioner's Motion for Preliminary Injunction (Preliminary Injunction Motion; Doc. 17). Respondents filed a consolidated brief in opposition to the Amended Petition and Bail Motion, see Respondents' Response in Opposition to Amended Petition for Writ of Habeas Corpus and Motion for Bail

(Response; Doc. 13) with exhibits (Resp. Ex.),[1] as well as a response to the Preliminary Injunction Motion. <u>See</u> Respondents' Response in Opposition to Petitioner's Motion for Preliminary Injunction (Doc. 21). Lukaj filed a brief in reply to the Response, <u>see</u> Petitioner's Reply to Respondent's Response in Opposition to Amended Petition for Writ of Habeas Corpus and Motion for Bail (Reply; Doc. 18), and a reply to Respondents' response to his Preliminary Injunction Motion. <u>See</u> Petitioner's Reply to Respondent's Response in opposition to Petitioner's Motion for Preliminary Injunction (Doc. 26). This case is ripe for review.

## II. Procedural History

Lukaj was admitted to the United States as a refugee from Albania on August 21, 1991, and his status was adjusted to lawful permanent resident on February 12, 1993. Resp. Ex. 1 at 4. On September 24, 2009, a Florida criminal court convicted Lukaj of trafficking in MDMA, more than 400 grams but less than 30 kilograms, and conspiracy to traffic in MDMA, more than 400 grams but less than 30 kilograms. <u>Id.</u> The state court sentenced Lukaj to a term of incarceration of four years in prison, with each count to run concurrently. <u>Id.</u> Thereafter, on August 9, 2010, a Florida criminal court convicted Lukaj of aggravated battery with a firearm and sentenced him to a term of incarceration of ten years in prison, ordering his sentence to run concurrently with the previously imposed sentence for the drug convictions. <u>Id.</u>

On July 17, 2015, the Department of Homeland Security (DHS) initiated removal proceedings, asserting that Lukaj was eligible for removal on four grounds:  specifically

---

[1] The Court will cite the page number assigned by the Court's electronic docketing system.

2

his convictions for: (1) an aggravated felony involving illicit trafficking of a controlled substance; (2) an aggravated felony constituting a crime of violence; (3) a crime relating to a controlled substance; and (4) a crime involving the possession of a firearm. Id. at 3. On March 15, 2016, an Immigration Judge sustained all four charges of removability, denied Lukaj's applications for asylum and cancellation of removal, and ordered Lukaj to be deported to Serbia, or, in the alternative, Albania. Id. at 30. The Immigration Judge also determined that the nature of Lukaj's convictions rendered him ineligible for cancellation of removal. Id. at 27.

Lukaj appealed the Immigration Judge's order of removal to the Board of Immigration Appeals (Board). Resp. Ex. 2. On appeal, Lukaj argued the Immigration Judge committed the following procedural errors: (1) misallocating the burden of proof; (2) refusing to accept telephonic testimony from potential witnesses; (3) admitting irrelevant and prejudicial evidence into the record; (4) unreasonably denying his request for a continuance; and (5) failing to recuse herself. Id. at 5. Lukaj also challenged the Immigration Judge's legal analysis with respect to the merits of the aggravated felony and firearm offense charges. Id. On January 30, 2017, the Board issued a written decision finding Lukaj to be removable and ineligible for cancellation of removal, and dismissing the appeal. Id. at 8.

On February 21, 2016, Lukaj petitioned the Eleventh Circuit Court of Appeals (Eleventh Circuit) to review the Board's decision. Resp. Ex. 4. During the pendency of that appeal, Lukaj completed his state prison sentences and Immigration and Customs Enforcement (ICE) immediately detained him following his release on August 15, 2018. Amended Petition at 6. On February 26, 2019, the Eleventh Circuit granted in part, and

dismissed in part, Lukaj's petition for review. Resp. Ex. 3. The Eleventh Circuit granted Lukaj's petition to the extent that Lukaj challenged the denial of his applications for asylum, withholding of removal, and cancellation of removal in light of the United States Supreme Court's decision in Sessions v. Dimaya, 138 S.Ct. 1204 (2018). In remanding the case to the Board for reconsideration, the Eleventh Circuit held the "Board should be given the first opportunity to decide how to classify Lukaj's conviction for aggravated battery and to determine whether he is eligible for asylum, withholding of removal, and cancellation of removal." Resp. Ex. 3 at 10.[2] The Eleventh Circuit issued the Mandate on April 19, 2019. Resp. Ex. 4.

On August 2, 2019, pursuant to the Eleventh Circuit's Mandate, the Board issued a decision again denying Lukaj's motion to remand to the Immigration Judge and dismissing Lukaj's appeal of the Immigration Judge's decision. Doc. 20-1. The Board concluded that Lukaj is removable and does not qualify for any form of relief or protection against removal. Id. at 6. On August 13, 2019, Lukaj filed a petition for review in the Eleventh Circuit. See Doc. 26-1.

### III. Governing Legal Principles

### A. Jurisdiction

Pursuant to 28 U.S.C. § 2241(c)(3), a person held in custody can petition for a writ of habeas corpus where the person alleges that he or she "is in custody in violation of the Constitution or laws or treaties of the United States." This section confers jurisdiction upon the federal courts to hear cases challenging the lawfulness of immigration-related

---

[2] The Court of Appeals dismissed Lukaj's petition to the extent it challenged the denial of his motion to recuse the Immigration Judge. Resp. Ex. 3 at 10-11.

detention. See Zadvydas v. Davis, 533 U.S. 678, 687-88 (2001); see also Demore v. Kim, 538 U.S. 510, 517 (2003) (noting that federal courts have jurisdiction in habeas proceedings to review constitutional challenges to § 1226(c)).

## B. Relevant Immigration Law

The Due Process Clause of the Fifth Amendment provides in part that "[n]o person shall ... be deprived of life, liberty, or property, without due process of law...." U.S. CONST. amend. V. It is beyond dispute that the Fifth Amendment entitles aliens to due process in deportation proceedings. Reno v. Flores, 507 U.S. 292, 306 (1993). Indeed, the Supreme Court has unequivocally stated that "the Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." Zadvydas, 533 U.S. at 693. Nevertheless, "detention during deportation proceedings [is] a constitutionally valid aspect of the deportation process." Demore, 538 U.S. at 523. By statute, the Attorney General is required to take into custody any alien who is inadmissible or deportable by reason of having committed certain enumerated criminal offenses after the alien has been released from criminal incarceration. 8 U.S.C. § 1226(c)(1). The only statutory exception to this requirement is if release of the alien is necessary to effectuate witness protection so long as the release of the alien would not pose a danger or flight risk. Id. at § 1226(c)(2). Notably, another provision of this statute explicitly prohibits the Attorney General from releasing on bond criminal aliens as defined in § 1226(c). Id. at 1226(a); see also Jennings v. Rodriguez, 138 S.Ct. 830, 837 (2018) (noting that "[s]ection 1226(c), however, carves out a statutory category of aliens who may *not* be released under § 1226(a).") (emphasis in original).

In <u>Demore</u>, the United States Supreme Court held that § 1226(c) does not violate the due process rights of criminal aliens who have conceded their deportability and are being detained for the limited period of their removal proceedings. <u>Demore</u>, 538 U.S. at 513. In reaching this conclusion, the Supreme Court reasoned that because § 1226(c) concerns detention <u>pending removal proceedings</u>, the detention does not run the risk of being indefinite or potentially permanent and "[s]uch detention necessarily serves the purpose of preventing deportable criminal aliens from fleeing prior to or during their removal proceedings," which increases the likelihood that the alien will be successfully removed. <u>Id.</u> at 528. In <u>Demore</u>, the permanent resident alien argued that the Fifth Amendment required an individualized bond hearing to determine whether he was either a danger to society or a flight risk. <u>Id.</u> at 514. However, the Supreme Court disagreed, holding that "when the Government deals with deportable aliens, the Due Process Clause does not require it to employ the least burdensome means to accomplish its goal" and "[t]he evidence Congress had before it certainly supports the approach it selected [mandatory detention pending removal proceedings] even if other, hypothetical studies might have suggested different courses of action." <u>Id.</u> at 528.

Important to the Supreme Court's determination that mandatory detention under § 1226(c) survived a constitutional due process challenge in <u>Demore</u> was its consideration of removal proceeding statistics. In reaching its decision the Court relied on statistics showing that, in the majority of cases, a criminal alien's removal proceedings lasted less than 90 days. <u>Id.</u> at 529 ("[I]n 85% of the cases in which aliens are detained pursuant to § 1226(c), removal proceedings are completed in an average time of 47 days and a median of 30 days. In the remaining 15% of cases, in which the alien appeals the decision

of the [IJ] to the [BIA], appeal takes an average of four months, with a median time that is slightly shorter.") (internal citations omitted). The Supreme Court concluded that mandatory detention under § 1226(c) "lasts roughly a month and a half in the vast majority of cases" and up to "about five months" where the alien appeals. Id. at 530. Noting that the alien petitioner had been in custody only slightly longer than average and that he had requested a continuation of his removal hearing, the Court determined that his due process challenge failed. Id. at 531.

In a concurring opinion, Justice Kennedy observed that, while pre-removal detention without a bond hearing is constitutional, it can grow so long that it violates Due Process. Id. at 531-33 (Kennedy, J., concurring). "[S]ince the Due Process Clause prohibits arbitrary deprivations of liberty, a lawful permanent resident alien… could be entitled to an individualized determination as to his risk of flight and dangerousness if the continued detention became unreasonable or unjustified." Id. at 532 (citing Zadvydas, 533 U.S. at 684-86). Justice Kennedy wrote that he believed the majority's opinion was "consistent with these premises." Id. at 533.

In the first few years following the Supreme Court's decision in Demore:

> every federal court of appeals to examine § 1226(c) has recognized that the Due Process Clause imposes some form of "reasonableness" limitation upon the duration of detention that can be considered justifiable under that statute. See Lora v. Shanahan, 804 F.3d 601, 606 (2d Cir. 2015); Rodriguez v. Robbins (Rodriguez I), 715 F.3d 1127, 1138 (9th Cir. 2013)[, cert. granted, ___ S. Ct. ____, No. 15-1204, 2016 WL 1182403 (June 20, 2016)]; Diop v. ICE/Homeland Sec., 656 F.3d 221, 232–33 (3d Cir. 2011); Ly v. Hansen, 351 F.3d 263, 269–70 (6th Cir. 2003). And, each circuit has found it necessary to read an implicit reasonableness requirement into the statute itself, generally based on the doctrine of constitutional avoidance. See Lora, 804 F.3d at 614;

<u>Rodriguez I</u>, 715 F.3d at 1138; <u>Diop</u>, 656 F.3d at 235; <u>Ly</u>, 351 F.3d at 270.

<u>Reid v. Donelan</u>, 819 F.3d 486, 494 (1st Cir. 2016) <u>opinion withdrawn on reconsideration</u> <u>Reid v. Donelan</u>, Nos. 14-1270, 14-1803, 14-1823, 2018 WL 4000993 (1st Cir. May 11, 2018). In June of 2016, the Eleventh Circuit followed suit and issued an opinion in which it found, "as a matter of constitutional avoidance, we readily join other circuits in holding that § 1226(c) 'implicitly authorizes detention for a reasonable amount of time, after which the authorities must make an individualized inquiry into whether detention is still necessary to fulfill the statute's purposes of ensuring that an alien attends removal proceedings and that his release will not pose a danger to the community.'" <u>Sopo v. U.S.</u> <u>Attorney General</u>, 825 F.3d 1199, 1213-14 (11th Cir. 2016) (citation omitted) (<u>Sopo I</u>), <u>vacated as moot</u>, <u>Sopo v. U.S. Attorney General</u>, 890 F.3d 952, 954 (11th Cir. 2018) (<u>Sopo II</u>).

However, in 2018, the United States Supreme Court took up the issue regarding the statutory construction of section 1226(c) and held lower courts could not use the canon of constitutional avoidance to interpret the statue as implicitly placing a six-month limit on detention or requiring periodic bond hearings. <u>See</u> <u>Rodriguez</u>, 138 S.Ct. 830. Review of the plain language of the statute led the Supreme Court to note that "[b]y expressly stating that the covered aliens may be released 'only if' certain conditions are met, 8 U.S.C. § 1226(c)(2), the statute expressly and unequivocally imposes an affirmative *prohibition* on releasing detained aliens under any other conditions." <u>Id.</u> at 847 (emphasis in original). As such, the Supreme Court held "that § 1226(c) mandates detention of any alien falling within its scope and that detention may end prior to the conclusion of removal proceedings 'only if' the alien is released for witness-protection

purposes." Id. at 847 ("As long as the detained alien is not covered by § 1226(c), the Attorney General 'may release' the alien on 'bond . . . or conditional parole.'") (quoting 8 U.S.C. § 1226(a)). Nevertheless, in reaching its decision on how to interpret the statute, the Supreme Court specifically declined to reach the constitutional question of whether § 1226(c) violates an alien's due process rights if the period of mandatory detention is unreasonably long. Id. at 851.

Following the decision in Sopo I, the Government moved for rehearing en banc, but the Eleventh Circuit stayed that request pending the Supreme Court's decision in Rodriguez. Sopo II, 890 F.3d at 953. Once the Supreme Court issued the Rodriguez decision, the Eleventh Circuit ordered additional briefing; however, prior to the parties filing the supplemental briefs addressing Rodriguez, the Government moved to dismiss the Sopo appeal as moot based on Sopo's removal from the United States. Id. Sopo agreed that his appeal had become moot and the Eleventh Circuit granted the motion, dismissing the appeal and vacating its decision in Sopo I. Id. at 953-54. Accordingly, Sopo I is not binding precedent in this circuit, and in Rodriguez the Supreme Court explicitly overruled Sopo I's statutory analysis and construction of § 1226(c).

This does not, however, end the discussion, as Rodriguez left open the constitutional question of whether § 1226(c) as interpreted in Rodriguez violates the Due Process Clause of the Fifth Amendment if the period of detention becomes unreasonably prolonged. Since Rodriguez, at least one circuit court has noted that while Rodriguez overruled the previous statutory interpretation of § 1226(c) that read an implicit reasonableness limitation into the statute, it did not call into question the constitutional holding that mandatory detention under § 1226(c) could violate due process if it is

unreasonably long. See Borbot v. Warden Hudson County Corr. Facility, 906 F.3d 274, 278 (3rd Cir. 2018). Other district courts have also determined that unreasonably prolonged detention without a bond hearing under 8 U.S.C. § 1226(c) violates due process. See Kabba v. Barr, No. 19-cv-643, 2019 WL 3974135 (W.D.N.Y. August 22, 2019) (holding petitioner's unreasonably prolonged detention of eighteen months under § 1226(c) violated due process and an individualized bond hearing was necessary); Reid v. Donelan, 390 F. Supp. 3d 201 (D. Mass. 2019) (holding in class action suit that mandatory detention pursuant to § 1226(c) without a bond hearing would violate due process once detention became unreasonably prolonged).

### C. Preliminary Injunction

The Eleventh Circuit has explained that:

> A preliminary injunction is an "extraordinary and drastic remedy."  McDonald's Corp. v. Robertson, 147 F.3d 1301, 1306 (11th Cir. 1998) (quoting All Care Nursing Serv., Inc. v. Bethesda Mem'l Hosp., Inc., 887 F.2d 1535, 1537 (11th Cir. 1989)).  To secure an injunction, a party must prove four elements: (1) a substantial likelihood of success on the merits; (2) irreparable injury absent an injunction; (3) the injury outweighs whatever damage an injunction may cause the opposing party; and (4) an injunction is not adverse to the public interest. Id.

Citizens for Police Accountability Political Comm. v. Browning, 572 F.3d 1213, 1217 (11th Cir. 2009) (per curiam); Keister v. Bell, 879 F.3d 1282, 1287-88 (11th Cir. 2018), cert. denied, No. 18-17, 2018 WL 3241787 (Oct. 1, 2018). The movant must clearly establish the burden of persuasion as to all four requisites. See McDonald's Corp. v. Robertson, 147 F.3d 1301, 1306 (11th Cir. 1998).

**D. Bail**

The Eighth Amendment to the Constitution states in part that "[e]xcessive bail shall not be required . . . ." U.S. Const. amend. VIII. As relevant to this action, a district court has the power to release a habeas petitioner on bail if he satisfies two criteria: (1) he has demonstrated a likelihood of success on the merits of a substantial constitutional claim, and (2) extraordinary and exceptional circumstances exist that make the grant of bail necessary to preserve the effectiveness of the habeas corpus relief sought. Gomez v. United States, 899 F.2d 1124, 1125 (11th Cir. 1990). However, a court cannot release a habeas petitioner on bail if "release [on bail] affords the defendant more relief temporarily than he would be entitled to even if he prevails in his habeas corpus action[.]" Id. Notably, the Supreme Court has held that the Eighth Amendment's prohibition against excessive bail does not mandate the allowance of bail in deportation cases. Carlson v. Landon, 342 U.S. 524, 544-46 (1952).

**IV. Findings of Fact and Conclusions of Law**

**A. Habeas Petition**

**1. Claim One**

In his First Claim, Lukaj contends that the Respondents are violating the Due Process Clause of the Fifth Amendment to the United States Constitution because they have detained him for an unreasonably prolonged period of time without a bond hearing. Amended Petition at 17. Relying on Demore and Zadvydas, Lukaj maintains "[d]etention without a bond hearing is unconstitutional when it exceeds six months." Id. at 11. Alternatively, Lukaj asserts that "at a minimum, due process requires a bond hearing after detention has become unreasonably prolonged." Id. at 12. According to Lukaj, "to justify

Petitioner's ongoing prolonged detention, due process requires that the government establish, at an individualized hearing before a neutral decision maker, that Petitioner's detention is justified by clear and convincing evidence of flight risk or danger, even after consideration whether alternatives to detention could sufficiently mitigate that risk." Id. While recognizing that Rodriguez abrogates the holding in Sopo I, Lukaj still argues that it remains persuasive authority that should guide this Court in determining whether habeas relief is warranted because Rodriguez did not address the constitutionality of § 1226(c). Id. at 15-16. Lukaj avers that under Sopo I's fact-dependent inquiry concerning the reasonableness of the detention, he is entitled to a bond hearing because he has been detained more than six months, he was not responsible for the delays in the removal proceedings and has diligently prosecuted the case, he will likely succeed on the merits before the Immigration Judge, he is being kept in a criminal detention facility with deplorable conditions, his detention has caused extreme hardship to himself and his family, and he suffers from poor health. Id. at 16-17.

In seeking dismissal of the Amended Petition and denial of the Bond Motion, Respondents assert that "mandatory detention under Section 1226(c) during removal proceedings does not violate the Due Process Clause since the detention is an integral part of those proceedings and continues to serve the statute's purpose." Response at 7. According to Respondents, that purpose is to ensure criminal aliens will not abscond and that if ordered removed, the Government actually will be able to remove the criminal alien. Id. at 10. Additionally, Respondents aver that mandatory detention pursuant to § 1226(c) does not pose the risk of potentially permanent detention. Id. Respondents rely on Demore in support of their argument, noting the Supreme Court determined the alien

petitioner's six-month detention was unusual but reasonable in light of his requested continuance of his removal hearing. Id. at 8-9. According to Respondents, the Rodriguez decision "compromised" the Eleventh Circuit's analysis in Sopo I, rendering reliance on its discussion unreasonable at this point. Id. at 13-14. Nevertheless, Respondents maintain that even if the Court were to address this case under Sopo I's case-by-case assessment analysis, "petitioner's case is not an outlier or extraordinary case, and his detention continues to fulfill the purpose of facilitating deportation and protecting against flight or dangerousness." Id. at 12. In analyzing the circumstances of this case, Respondents contend that the Government's actions did not unreasonably delay this case, as Lukaj's litigation decisions and pending changes in relevant case law caused the delays;[3] Lukaj's criminal detention far exceeded his current civil detention; the length of Lukaj's current detention is within time periods that other courts have found did not violate due process; and there are no known impediments to Lukaj's removal if the immigration judge ultimately orders his removal. Id. at 15-17. Respondents also assert that if the Court orders a bond hearing, the Government is not required to bear the burden of proof and, even if it did, the burden of proof would not be clear and convincing evidence. Id. at 18-20.

A procedural due process analysis requires a court to conduct a two-part inquiry: first determining whether a petitioner was deprived of a protected interest, and, second, if so, was due process afforded. See Logan v. Zimmerman Brush Co., 455 U.S. 422, 1153-54 (1982). Without question, even for aliens, "[f]reedom from imprisonment-from

_____

[3] Respondents specifically note that Lukaj's request to the Eleventh Circuit for a stay pending the Supreme Court's decision in Sessions v. Dimaya "accounts for the majority of the time he has been in detention - 8 months." Response at 16.

government custody, detention, or other forms of physical restraint-lies at the heart of the liberty that Clause protects." <u>Zadvydas</u>, 533 U.S. at 690. Accordingly, the Court finds that Lukaj has established a deprivation of his freedom from imprisonment. Therefore, the Court now examines whether he was afforded due process. The Supreme Court in <u>Demore</u> generally found that § 1226(c) does not violate due process in light of the relatively brief, definite period of detention most aliens face under this section. But that is not the end of the inquiry here, because Lukaj argues that his detention is not brief and will not end for years. As such, the concerns expressed in Justice Kennedy's concurring opinion in <u>Demore</u> must be addressed.

The Court notes that vacated opinions are void and have no legal effect; however, they can still have persuasive value. <u>Friends of Everglades v. S. Fla. Water Mgmt. Dist.</u>, 570 F.3d 1210, 1218 (11th Cir. 2009). Upon review of the relevant case law, the Court finds the Eleventh Circuit's reasoning in <u>Sopo I</u> is still persuasive even in light of <u>Rodriguez</u>. Although the Eleventh Circuit did not make an explicit holding as to the constitutionality of indefinite detention under § 1226(c), instead relying on principles of statutory construction, its discussion certainly suggests a significant constitutional concern regarding lengthy mandatory detention without a bond hearing; otherwise, it would not have had any need to use the canon of constitutional avoidance to sidestep what appeared to be a legitimate due process concern. <u>See</u> <u>Sopo I</u>, 825 F.3d at 1213-14. Indeed, in <u>Sopo I</u>, the Eleventh Circuit noted that removal proceedings had become far more protracted in recent years since the Supreme Court decided <u>Demore</u>. <u>Id.</u> at 1213. As discussed above, <u>Demore</u> relied in part on the relatively short detention period it found existed at the time, holding that Congress may require criminal aliens "be detained for the

brief period necessary for their removal proceedings." Demore, 538 U.S. at 513 (emphasis added). In light of Justice Kennedy's concurrence that unreasonably prolonged detention could trigger the necessity for a bond hearing and keeping in mind that aliens have a constitutionally protected interest in avoiding physical restraint, the Court is persuaded that §1226(c) can violate the Due Process Clause if it becomes unreasonably or unjustifiably prolonged with no possibility of a bond hearing.[4] See Reid, 390 F. Supp. 3d at 215 (citing Reid, 819 F.3d at 498-99). As such, the Court must now examine whether Lukaj's detention has been unreasonably or unjustifiably prolonged such that the lack of a bond hearing would violate his due process rights.

The Court again finds Sopo I persuasive on this matter to the extent that it counsels reasonableness should be determined on a case-by-case basis. Thus, the Court will examine the instant case in light of the factors outlined in Sopo I and other relevant factors expressed in the parties' filings. See Sopo I, 825 F.3d at 1217-19; see also Reid, 390 F. Supp. 3d at 217 (collecting cases applying an individual reasonableness analysis). The Eleventh Circuit in Sopo I identified a list of nonexhaustive factors to consider in a reasonableness analysis: (1) the amount of time the alien has been in detention without a hearing; (2) the cause of the protracted removal proceedings; (3) whether it will be possible to remove the alien upon the issuance of a final order of removal; (4) whether the period of civil immigration detention exceeds the time the alien spent in prison for the crime that rendered the alien removable; and (5) whether the facility at which the alien is civilly detained is meaningfully different from a penal institution. Sopo I, 825 F.3d at 1217-

_____

[4] The Due Process Clause, however, does not mandate automatic release for an alien who obtains a bond hearing; instead, it merely requires that the Government at least provide the alien with an individualized bond hearing. See Sopo I, 825 F.3d at 1218.

18; see also Reid, 390 F. Supp. 3d 219 (quoting Reid, 819 F. 3d at 500) (listing the following nonexclusive factors relevant in determining the reasonableness of continued mandatory detention: length of detention; foreseeability of proceedings concluding in the near future; period of detention compared to the criminal sentence; the promptness or delay of immigration authorities or the detainee during the proceedings; and the likelihood the proceedings will culminate in a final removal order); Muse v. Barr, No. 18-cv-0054, 2019 WL 4254676, *3 (D. Minn. Sept. 9, 2019) (listing the following factors to analyze: the total length of detention to date; the likely duration of future detention; the conditions of detention; delays of the removal proceedings caused by the detainee; delays of the removal proceedings caused by the government; and the likelihood that the removal proceedings will result in a final order of removal); Constant v. Barr, No. 1:19-cv-00182 EAW, 2019 WL 4254078, * (W.D. N.Y. Sept. 9, 2019) (quoting Cabral v. Decker, 331 F. Supp. 3d 255, 261) (reviewing the following factors: "(1) the length of time the petitioner has been detained; (2) the party responsible for the delay; (3) whether the petitioner has asserted defenses to removal; (4) whether the detention will exceed the time the petitioner spent in prison for the crime that made him removable; (5) whether the detention facility is meaningfully different from a penal institution for criminal detention; (6) the nature of the crimes committed by the petitioner; and (7) whether the petitioner's detention is near conclusion."); Bah v. Barr, No. 1:19-cv-641, 2019 WL 4247823, *6 n.9 (E.D. Va. Sept. 6, 2019) (considering factors such as "(1) the duration of detention, including the anticipated time to completion of the alien's removal proceedings; (2) whether the civil detention exceeds the criminal detention for the underlying offense; (3) dilatory tactics employed in bad faith by the parties or adjudicators; (4) procedural or substantive legal errors that

significantly extend the duration of detention; and (5) the likelihood that the government will secure a final removal order."). Given the specific facts of this case, the Court will also examine the current procedural posture of the removal proceedings and the health and wellbeing of Lukaj and his family.

First, the Court considers the length of Lukaj's detention. The Government first detained Lukaj in August of 2018; therefore, he has been detained for just short of fourteen months without a bond hearing. The Eleventh Circuit has "suggest[ed] that a criminal alien's detention without a bond hearing may often become unreasonable by the one-year mark, depending on the facts of the case." Id. at 1217. Although not a bright line, here, Lukaj's detention has extended beyond the potentially unreasonable one-year mark.

Second, the Court must examine what caused Lukaj's case to be protracted. The Court finds no evidence that Lukaj acted in bad faith or sought to deliberately slow the proceedings. Instead, the record reflects that the bulk of the one-year detention period was spent while his case was on appeal to the Eleventh Circuit. See Response at 4. The Government first detained Lukaj pursuant to § 1226(c) on August 15, 2018, while his appeal to the Eleventh Circuit was pending. The Eleventh Circuit issued its Mandate on April 19, 2019. Resp. Ex. 3. Accordingly, approximately eight months of Lukaj's now almost fourteen-month long detention were spent awaiting the Eleventh Circuit's decision. While the appeal itself was stayed, by Lukaj's request, pending the outcome of litigation in the Supreme Court, that litigation was directly relevant to Lukaj's case and ultimately resulted in the partial granting of relief in his appeal. As such, the Court will not fault Lukaj

for pursuing, in good faith, relief on appeal, especially in light of the success Lukaj obtained in that appeal. See Sopo I, 825 at 1218.

Third, with regard to the likelihood of removal, Respondents represent that there is no known impediment to final removal if ordered. Response at 17. Lukaj does not dispute this contention. Accordingly, this factor would support the reasonableness of continued detention, in that it would not create the possibility of even more prolonged detention should Lukaj be ordered removed from the country. Also supporting the reasonableness of the detention, is the fact that Lukaj's period of incarceration for his criminal convictions far exceeds his current civil detention awaiting removal proceedings. However, the fact that Lukaj is currently detained in a facility that is also used for criminal detentions, rendering it substantially similar to criminal detention, weighs against the reasonableness of his current civil detention.

Another factor relevant to the reasonableness analysis, is the procedural posture of the removal proceedings. Although the Board acted quickly upon the Eleventh Circuit's remand following his appeal, Lukaj is now again appealing the Board's decision to the Eleventh Circuit Court of Appeals, which means there exists a legitimate possibility that removal proceedings will be prolonged for an even longer period of time. This factor weighs in favor of providing Lukaj with the opportunity for a bond hearing.

Lukaj has also expressed concerns regarding his health and his family that the Court will now examine. Lukaj represents that he was tortured while living in Albania and currently suffers from post-traumatic stress disorder (PTSD) as a result of that experience and claims Respondents have failed to treat him during his detention. Preliminary Injunction Motion at 5-6; see also Doc. 17-1 at 6 (Lukaj affidavit). Lukaj's medical

concerns and the purported lack of treatment, which Respondents have not disputed, is a factor which supports a finding that his continued indefinite detention without a bond hearing would be unreasonable. Lukaj also maintains that his indefinite detention is causing acute and possibly permanent psychological damage to himself and his family because of the emotional and psychological impact his indefinite separation has on his family. Preliminary Injunction Motion at 6-7. In light of the fact that Lukaj was incarcerated for over ten years in prison as a result of his criminal convictions, the Court finds his concerns regarding psychological harm to himself and his family do not weigh heavily in the Court's analysis of the reasonableness of his current detention. Lukaj's separation from his family is not a new occurrence resulting from his current detention but rather something to which he and his family would have become accustomed, as much as anyone can, over the past decade due to his criminal convictions.

In reviewing the particular circumstances of this case, the Court finds Lukaj's year-long detention in a criminal facility where he has not received treatment for his medical condition and with what amounts to a restart of his entire removal proceedings constitutes an unreasonably prolonged detention in violation of the Due Process Clause that entitles him to an individualized bond hearing. As such, Lukaj's Amended Petition is due to be granted to the extent the Court will order Respondent to provide Lukaj with an individualized bond hearing.

The Court next considers whether to address the burden of proof to be applied at the bond hearing. In this regard, the Court declines to create a new bond procedure. Instead, as the Eleventh Circuit did in Sopo I, the Court directs the bond hearing to "follow 8 C.F.R. § 1236.1(c) to afford the detainee alien with an opportunity to obtain bond from

the District Director, and if necessary, to appeal to the IJ and then to the BIA under the provisions outlined in § 1236.1(d)." Sopo I, 825 F.3d at 1220. Lukaj shall bear the burden of proof to show that he is not a flight risk or a danger to others. Id.

### 2. Claim Two

Lukaj asserts that Respondents are violating the Eighth Amendment's prohibition against excessive bail. Amended Petition at 17-18. According to Lukaj, "[t]he Government's categorical denial of bail to certain noncitizens violates the right to bail encompassed by the Eighth Amendment." Id. at 18. Respondents argue that the Eighth Amendment does not apply to immigration detention. Response at 20-21. According to Respondents, the Supreme Court "has never held that persons detained in civil proceedings, such as removal or deportation proceedings, are entitled to release on bail." Id. at 21. Based on the Supreme Court's decision in Carson, the Court concludes Lukaj's Eighth Amendment claim fails. The plain language of the Eighth Amendment does not guarantee the possibility of bail in all cases. Instead, it merely prohibits the imposition of excessive bail. See Carlson, 342 U.S. at 544-46. Accordingly, Lukaj's Second Claim for relief is due to be denied.

### B. Preliminary Injunction and Bail

In light of the Court's decision to grant the Amended Petition, Lukaj's request for a preliminary injunction and bail are due to be denied as moot.

Therefore, it is now

**ORDERED AND ADJUDGED:**

1.     The Amended Petition (Doc. 8) is **GRANTED**. The Respondents are **ORDERED** to grant Lukaj an individualized bond inquiry within fifteen days of the filing

date of this Order. Respondents shall report to this Court within ten days following the bond hearing regarding compliance with this Order.

2.      The Preliminary Injunction Motion (Doc. 17) is **DENIED AS MOOT**.

3.      The Bail Motion (Doc. 9) is **DENIED AS MOOT.**

4.      The Clerk of the Court is directed to administratively close this case and terminate any pending motions.

**DONE AND ORDERED** at Jacksonville, Florida, this 8th day of September, 2019.

MARCIA MORALES HOWARD
United States District Judge

Jax-8

C:      counsel of record